UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
SECURITIES AND EXCHANGE COMMISSION,       )
                                          )
              Plaintiff,                   )
                                          )
       v.                                  )        Case No. 1:16-cv-10607- NMG
                                          )
DAVID JOHNSTON                            )
                                          )
              Defendant.                   )
_____ )


**PLAINTIFF'S OPPOSITION TO DEFENDANT DAVID JOHNSTON'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF EVENTS AFTER THE APRIL 30, 2013 DISCLOSURE OF THE SECOND RECOMMENDED TRIAL**

Plaintiff Securities and Exchange Commission ("SEC") hereby opposes Defendant David Johnston's motion *in limine* to exclude evidence of anything that happened after the FDA's April 30, 2013 disclosure that the agency had previously recommended that Aveo conduct a second clinical trial (the "Motion"). Although Johnston's Motion is cast as broad, it really focuses on just two things: Aveo's stock price drop after the May 2, 2013 ODAC vote and the FDA's June 6, 2013 Complete Response Letter.[1] As explained below, however, both of these facts are highly relevant to rebutting Johnston's principal defense, based on expert opinion, that the FDA's recommendation was not material because it was not a requirement and, therefore, was uninterpretable as something the FDA wanted for approval. The FDA's Complete Response Letter provides a second concrete example of where the FDA recommends action (and

_____

[1] Indeed, in identifying specific facts after April 30, 2013, the Motion identifies only the ODAC vote and the Complete Response Letter. *See* Memorandum in support of the Motion, ECF 125, p.3 ("such as the adverse ODAC vote and the FDA's Complete Response Letter").

specifically a second clinical trial) it wants undertaken but does not have regulatory or statutory authority to require the action.  Second, Aveo's stock price drop on May 2 (the date of the ODAC vote) shows that the market differentiated, and understood the difference between, a recommendation and an application-ending ODAC vote.  Excluding these pieces of evidence would enable Johnston to create an unfairly misleading picture of FDA communications and exclude the market participants' differentiated reactions to the recommendation and the ODAC vote, both of which are relevant to debunking Johnston's expert-based materiality defense.

The Commission agrees, however, that Johnston's scienter should be judged by things he knew before April 30, 2013.  The Commission submits, however, that a specific limiting instruction would be a fair and effective way to admit this relevant evidence, while also giving the jury common sense, and easily followed, direction that post-recommendation evidence should not be used to assess Johnston's state of mind.

Johnston's Motion to exclude all evidence of events after April 30, 2013 should be denied.

## I.    <u>Factual Background</u>

At a pre-NDA filing meeting held on May 11, 2012, the FDA recommended that AVEO conduct a second adequately powered trial to address the FDA's serious concerns about the safety of AVEO's lead drug, TIVO.  *See* SEC Local Rule 56.1 Statement of Facts ("SEC SoF"), ECF No. 109, ¶¶6-8.  In particular, the FDA "recommended" that Aveo conduct a second clinical trial adequately powered to resolve the FDA's concern about an adverse trend in overall survival that showed patients treated with TIVO were dying earlier than patients treated with a drug

already approved by the FDA.  *See Exhibit A* (Excerpt of May 11, 2012 meeting minutes); SEC SoF., ¶8.

On August 2, 2012, AVEO disclosed that the FDA had concerns about TIVO's safety in a press release.  *Id.*, ¶19.  AVEO did not disclose that the FDA had recommended that AVEO conduct an entirely new, costly, and time consuming second trial to allay its concerns.  *Id.*  On April 30, 2013, the FDA disclosed that it had previously recommended that AVEO conduct a second trial.  *Id.*, ¶40.  The FDA disclosed the recommendation in a briefing book to the Oncologic Drug Advisory Committee (ODAC), which was scheduled to meet two days later on May 2, 2013.  As a result of the FDA's April 30, 2013 disclosure, AVEO's stock price plummeted by approximately 31%.  *Id.*, ¶40.

On May 2, 2013, the ODAC convened and voted 13-1 against approving TIVO.  *Id., ¶*41.  On that day, Aveo's stock plummeted by another 49.6 percent.  *See Exhibit B* (Excerpt of Expert Report of Cathy Niden), ¶12.  Approximately a month later, on June 6, 2013, the FDA issued a Complete Response letter disapproving the TIVO New Drug Application.  *See* SEC SoF, ¶42.  Within the Complete Response Letter, the FDA again "recommended" that Aveo conduct a second clinical study to address the agency's concern about overall survival, just like it had at the pre-NDA meeting back in May, 2012.  *Id.*; *see Exhibit C* (FDA Complete Response Letter), p.2 ("We recommend that you perform an adequate and well-controlled randomized trial(s) of tivozanib using PFS as the primary endpoint and OS as a secondary endpoint. . . . The trial should be powered to detect a difference in PFS and adequately sized to reassure us that there is no adverse effect on OS.").

## II.    Rebutting Johnston's Black-and-White "Requirement" Defense

As laid out in his Motion for Summary Judgment, Johnston's principal defense is that the FDA's recommendation to conduct a second study was immaterial because the FDA only recommended a second study, but it did not require it.  *See* Johnston Memorandum of Law In Support of Motion for Summary Judgment, ECF No. 87, p.2 ("By 'recommending' a second clinical trial at the pre-NDA meeting, the FDA used bureaucratic jargon which told Aveo only that the agency though another trial was a good idea, but the FDA never *required* Aveo to undertake another study . . . .").  To buttress this defense, Johnston has hired a Covington & Burling lawyer who practices FDA law, Peter Barton Hutt, to express an expert opinion that the FDA "recommended," but never required Aveo to conduct the recommended second study, and that the FDA could have "required" the second trial by issuing a deficiency letter that would have halted the review process at any time while the application was under review.  *See Exhibit D* (Excerpt of Expert Report of Peter Barton Hutt, ¶39 (opining that FDA told Aveo clinical trial was a "recommendation," not a requirement, and would not be a disqualifying "deficiency"), ¶145 (stating principal conclusion that FDA recommended, but did not require, a second clinical trial for Tivo); *Exhibit E* (Excerpt of Deposition of Peter Barton Hutt), 185:24-186:10 (testifying that deficiency letter would stop review process).

The SEC plans to show that this black-and-white picture of FDA communications--that it communicates only idle recommendations or application-ending requirements--is not actually how the FDA operates, especially in the context of communicating with drug companies about prospective New Drug Applications.  As was explained by a FDA witness during discovery, the FDA recommends that a drug company take action in circumstances where the FDA "really

4

thinks" the company should do something because it would be a "very, very good idea," but the FDA uses the "recommends" terminology because the FDA cannot require the sponsor to take action absent a specific federal regulation on point.    SEC SoF, ¶9.    And, as Mr. Hutt acknowledged at his deposition, the FDA's authority over a New Drug Application does not begin until it is filed, and ends when the FDA rejects it.    *See Exhibit E* (Hutt Depo.), 57:5-17, 178:25-180:25.    Accordingly, the two best examples of situations where the FDA would "recommend" drug companies conduct a second study are (1) before an NDA is filed, and (2) after the NDA has been rejected.    And that is exactly what happed in this case.    At the pre-NDA meeting, the FDA recommended that Aveo conduct a second clinical trial to resolve the FDA's concerns about the adverse trend in overall survival.    *See* SEC SoF, ¶8.    Then, upon the issuance of the Complete Response Letter, the FDA again "recommended" that Aveo conduct a second clinical trial.    *Id.*, ¶42.

Without the Complete Response Letter in evidence, Johnston will unfairly argue that there is no other evidence of the FDA recommending a particular action that it wants, but where it lacks specific regulatory or statutory authority to require it.    This would obviously create a misleading picture of the FDA's communications and should be rejected.

### III.    Market Evidence Differentiating Recommendations and Requirements

Johnston's unrealistically simplistic view of the meaning of FDA communications is also contradicted by how much farther Aveo's stock dropped after the recommendation was publicly disclosed on April 30.    On April 30, Aveo's stock dropped 31% on news of the FDA's previous recommendation to conduct a second clinical trial.    Two days later, after the negative ODAC vote on May 2 that market participants saw as application-ending, Aveo's stock dropped by an

additional 49.6 percent.  This continuous market reaction (and decline)—first to an FDA recommendation and then a following negative advisory vote against approval—directly contradicts Johnston's contention that only requirements have meaning to the market.[2]

**IV.    Limiting Instruction Would Be Appropriate**

With regard to the issue of scienter, the Commission agrees that Johnston's state of mind can only have been influenced by information he knew prior to April 30, 2013.  To eliminate any risk of misuse of this evidence, the Commission proposes to provide the jury an appropriate limiting instruction to inform the jury that their consideration of post-April 30, 2013 events is limited to (1) assessing the FDA's use of the term "recommendation" in communications with a drug company where the agency does not have regulatory or statutory authority to require the recommended action; and (2) assessing the market reaction to different FDA communications and actions.  *See Smith v. Jenkins*, 732 F.3d 51, 69 (1st Cir. 2013) (noting "basic presumption of our jury system that the jury follows the court's instructions").

**V.    Conclusion**

WHEREFORE, the Commission respectfully requests that the Court deny Johnston's Motion to exclude any evidence of events after April 30, 2013.

---

[2] As set forth in SEC's Opposition to Excluding Securities Analyst Testimony and Reports, ECF 143, the SEC also intends on submitting analyst testimony and reports as evidence of their observations of, and reactions to, key regulatory events.  With regard to the May 2, 2013 ODAC vote, the Commission plans to offer this analyst evidence showing their interpretation of the ODAC vote and its meaning to the chances for an FDA decision in favor or against the approval of TIVO.

SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Richard Harper

Richard M. Harper II (BBO # 634782)
Susan Cooke Anderson (DC Bar No. 978173)
Eric Forni (BBO # 669685)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8827 (Forni direct)
(617) 573-4590 (fax)
fornie@sec.gov (Forni email)

DATED: April 21, 2018

## CERTIFICATE OF SERVICE

I, Richard Harper, hereby certify that this document was filed on this date through the ECF system and will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) as of the date of this filing.

/s/ Richard Harper

DATED: April 21, 2018